UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AEDAN J. MCCLUSKEY,

                Plaintiff,

                **MEMORANDUM & ORDER**
                  2:16-cv-3471 (DRH)

    -against-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                Defendant.
------------------------------------------------------------X

**APPEARANCES:**

**CHRISTOPHER JAMES BOWES**
Attorney for Plaintiff
54 Cobblestone Drive
Shoreham, New York 11786
By:    Christopher James Bowes, Esq.

**UNITED STATES ATTORNEYS OFFICE**
Attorney for Defendant
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
By:    Arthur Swerdloff, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

      Plaintiff Aedan McCluskey ("Plaintiff") commenced this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the

"Commissioner" or "Defendant") which denied his claim for Social Security Disability ("SSD")

benefits.  Presently before the Court are Plaintiff's motion and Defendant's cross-motion for

judgment on the pleadings pursuant to Fed. R. of Civ. P. ("Rule") 12(c). For the reasons

discussed below, Plaintiff's motion is denied and Defendant's cross-motion is granted.

## BACKGROUND

*I.  Procedural Background*

Plaintiff applied for SSD benefits from the Social Security Administration ("SSA") on

May 28, 2013, alleging a disability onset date of May 31, 2011. (Compl. ¶ 7.) SSA denied his

claim on July 25, 2013. (*Id.* ¶ 8.; *see also* Pl.'s Mem. in Supp. [ECF No. 17] at 4.) Plaintiff filed

a request for a hearing and on October 16, 2014, a hearing was held before Administrative Law

Judge ("ALJ") Jacqueline Haber Lamkay. (Compl. ¶¶ 8–9.) By Notice of Decision dated

November 10, 2014, ALJ Haber Lamkay denied Plaintiff's claims, finding that he was not

disabled. (*Id.* ¶ 10.) Plaintiff requested review by the Appeals Council, which declined review

on April 18, 2016. (*Id.* ¶¶ 11–12.) This action followed.

*II.  Factual Background*

  a.  Non-Medical Evidence

    1.  Plaintiff's Background and Work History

Plaintiff is a 53-year old former police officer for the New York City Police Department

("NYPD") residing in Kings Park, New York. (*Id.* ¶ 6.) Plaintiff worked for the NYPD from

1985 to 2011 in a series of positions. (Pl.'s Mem. in Supp. at 2.) From 1985 to 2001, he worked

as a patrol officer. (*Id.*) Between 2001 and 2006, Plaintiff worked in the firearms analysis

section, first as an evidence control officer and later as a firearms examiner. (Transcript ("Tr.")

at 58–59.) As an evidence control officer, Plaintiff mostly performed his duties while seated at a

computer. (Tr. at 59.) Plaintiff similarly completed most of his work as a firearms examiner

while seated. (*Id.*) The most Plaintiff was required to lift during his work as a firearms examiner was three pounds, the weight of a typical rifle. (Tr. at 60.)

In 2006, Plaintiff suffered an injury to his left hand when a rifle he was testing in the course of his duties exploded. (Pl.'s Mem. in Supp. at 2.) Plaintiff underwent surgery in 2006 to remove the shrapnel from his hand and again in 2008 to remove scar tissue. (*Id.*) Following this injury, Plaintiff worked as a police aide and was no longer testing firearms. (Tr. at 56.) As a police aide, Plaintiff sat at a desk and answered the phone. (*Id.*) Plaintiff often experienced back pain when he remained seated for long periods of time. (*Id.*) However, Plaintiff's supervisors allowed him to take breaks and lie down in the event his back began to bother him. (*Id.*) Plaintiff recounted that his police department supervisors were "very understanding" and allowed him to do "whatever [he] needed to do." (Tr. at 82.) Plaintiff was required to go out into the field on one occasion, which involved standing for several hours. (Tr. at 57.) Although this aggregated Plaintiff's back pain, his supervisor allowed him to take a break and lie down in the police van afterwards. (*Id.*)

### 2. Plaintiff's Testimony

Plaintiff testified before ALJ Haber Lamkay as follows. Plaintiff stated that his most significant problem is back pain between his shoulder blades that prevents him from sitting for extended periods of time. (Tr. at 62.) He also experiences pain in his lower back on a daily basis. (Tr. at 64.) Plaintiff takes Hydrocodone and Tylenol with Codeine twice a week to treat his pain, which often causes him to become drowsy and "loopy." (Tr. at 65.) His daily medications, for both pain and inflammation, do not cause him to become as "dopy" as the Hydrocodone, but they do make him drowsy. (Tr. at 66.) Plaintiff reported that he takes a one to three hour nap every day. (*Id.*) As a result of his hand injury, Plaintiff experiences daily pain in

his left hand, which manifests as occasional spasms.  (Tr. at 69.)  Plaintiff explained that his

doctors have advised against any additional surgery to remove the scar tissue in his hand and

alleviate the tension that limits his range of motion.  (Tr. at 70.)  Plaintiff's doctor had explained

that the healing process after an additional operation would only cause more scar tissue to form

over time.  (*Id.*)  Plaintiff stated that "most of the time" he can grip and hold a 16-ounce water

bottle with his left hand.  (Tr. at 70–71.)  Although Plaintiff testified that his left hand is weaker

than his right, he stated that he could pick up Cheerios or pennies with his left hand.  (Tr. at 73.)

Plaintiff is divorced and has partial custody of his twin daughters.  (Tr. at 51.)  When his

daughters are with him, Plaintiff puts them on the bus to school and assists them with their

homework.  (Tr. at 52.)  Plaintiff testified that he can sit and stand for about one hour at a time.

(Tr. at 62–63.)  Plaintiff reported that the heaviest thing that he can lift is a gallon of milk.  (Tr.

at 63.)  Plaintiff's daughters accompany him to the grocery store to do the "heavy lifting."  (*Id.*)

Plaintiff is ambidextrous, but writes and uses a computer mouse with his right hand.  (Tr. at 50.)

He used his left hand to play sports and hold a rifle while hunting.  (Tr. at 50–51.)  Although he

has a driver's license, Plaintiff drives two or three times a week at most, due to the side effects of

his pain medication.  (Tr. at 53.)  Plaintiff can take public transportation if necessary.  (Tr. at 76.)

Plaintiff can bathe himself, clean his house, do laundry, go shopping, and cook using a

microwave.  (Tr. at 74.)  He attends church regularly.  (Tr. at 76.)  Plaintiff testified that he

occasionally goes hunting with friends, but cannot actively participate to the extent that he did

prior to his injuries.  (Tr. at 75.)

### 3.  Vocational Expert's Testimony

Vocational expert Gail Paskuly ("Paskuly") testified at Plaintiff's hearing before ALJ

Haber Lamkay.  (Tr. at 84.)  Paskuly classified Plaintiff's previous work as a ballistics expert as

a light job with an Specific Vocational Preparation ("SVP") of 7. (Tr. at 87.) She explained, however, that Plaintiff may have actually performed this work at a sedentary level. (*Id.*) Paskuly classified Plaintiff's previous work as both an evidence control officer and as a police aide as sedentary work with an SVP of 3. (Tr. at 88.) ALJ Haber Lamkay then inquired whether an individual with the same age, education level, and past relevant work experience as the Plaintiff could perform Plaintiff's past work with the following limitations imposed:

> [C]apable of light exertional work, but . . . can never climb ladder, ropes or scaffolds . . . can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl . . . must avoid concentrated exposure to extreme cold, wetness, or humidity, vibration and hazards such as dangerous moving machinery and protected heights . . . can frequently handle or finger with the left hand . . . [a]nd he should be afforded the opportunity for a brief on to two minutes change of position every half an hour.

(Tr. at 88.) Paskuly responded that such a person could perform the work of a ballistics expert or police aide with these limitations. (*Id.*)

In response to questioning by ALJ Haber Lamkay, Paskuly testified that an individual could not perform Plaintiff's past work if they were only able to handle or finger with their left hand occasionally. (*Id.*) However, Paskuly indicated that an individual with such limitations could work as an usher or a counter clerk, both of which are classified as light jobs. (Tr. at 89.) ALJ Haber Lamkay then asked whether an individual who could only handle or finger occasionally with their left hand could perform any sedentary work. (Tr. at 90.) Paskuly responded that there would be no sedentary jobs such an individual could perform, including Plaintiff's past work. (*Id.*) She explained that "just about all sedentary jobs require at least frequent use of hands." (*Id.*) ALJ Haber Lamkay also inquired as to whether an individual who required a one-hour nap everyday could perform the work Paskuly described. (*Id.*) She replied that if the individual used their breaks to take the nap, they could still perform the work. (*Id.*)

B.  Medical Evidence - Treating Sources

1.  Evaluation by Dr. Salvatore Lenzo - Orthopedic Surgeon

Dr. Salvatore Lenzo of the New York University Hospital for Joint Diseases initially evaluated Plaintiff on May 8, 2008.[1]  (Tr. at 267.)  Plaintiff complained of pain at the base of his small left finger, swelling about the flexor of his left small finger, and a locking and clicking sensation.  (Tr. at 274.)  Dr. Lenzo's examination revealed definitive swelling and some tenderness at the base of Plaintiff's small left finger with associated crepitus and tendinitis, as well as scarring.  (*Id.*)  Dr. Lenzo also noticed scarring in Plaintiff's mid-palm from his prior surgery.  (*Id.*)  Plaintiff had difficulty making a fist without some pain.  (*Id.*)  Dr. Lenzo diagnosed scarring and tenosynovitis of the flexor tendons of Plaintiff's left small finger and recommended additional surgery.  (*Id.*)  Plaintiff underwent such surgery on October 27, 2008.  (Tr. at 269–270.)  Plaintiff attended physical therapy regularly after his surgery and had seven additional reassessment appointments with Dr. Lenzo.  (Tr. at 271–273.)

At one such appointment on May 19, 2011, Dr. Lenzo observed that Plaintiff was experiencing sensitivity over his palm and thickening of the palmar fascia.  (Tr. at 271.)  Plaintiff could make a full fist.  (*Id.*)  Dr. Lenzo opined that Plaintiff had a permanent disability with respect to his left hand.  (*Id.*)  At that time, Dr. Lenzo reported "[b]ased on my findings today, no further treatment is needed."  (*Id.*)  Dr. Lenzo did not provide further explanation for this conclusion.  (*Id.*)  In a letter dated August 3, 2011, Dr. Lenzo noted that Plaintiff's injuries were directly related to the 2006 injury sustained in the line of duty and that Plaintiff would never be able to return to full duty as an NYPD officer.  (Tr. at 268.)  Plaintiff returned on October 11, 2011, complaining of tenderness at the base of his left small finger.  (Tr. at 271.)  Dr. Lenzo

---

[1] Based on the information available to the Court, it appears that Dr. Lenzo was hired by Plaintiff.

observed a pretendinous cord and believed that the majority of Plaintiff's symptoms were due to Dupuytren's Contracture with some tenderness over the flexor tendon in that area. (*Id.*) At this time, in contrast to his previous conclusion, Dr. Lenzo recommended that Plaintiff consider additional surgical intervention. (*Id.*) However, there is nothing in the record indicating that Dr. Lenzo ever treated Plaintiff after his October 11, 2011 visit.

### 2. Evaluation by Dr. Mitchell Goldstein - Orthopedist

On November 26, 2012, Plaintiff was initially examined by Dr. Mitchell Goldstein of Orlin & Cohen Orthopedic Associates after complaining of pain in his left knee, neck, mid-back, and lower back.[2] (Tr. at 248.) Plaintiff reported neck pain and stiffness that at times traveled to his right shoulder, as well as lower back pain that at times resulted in cramping in his feet. (*Id.*) Plaintiff's symptoms worsened with activity and at night, sometimes impairing his ability to sleep. (*Id.*) The pain in Plaintiff's back stemmed from a 1989 car accident. (*Id.*) Dr. Goldstein's examination of Plaintiff's left knee showed neutral alignment, full range of motion, and soreness with full flexion. (Tr. at 249.) Examination of the neck revealed pain, muscle spasm, and diminished flexibility, extension, rotation, and lateral bending. (*Id.*) There was pain, diminished flexion extension, and rotation, as well as lateral bending and muscle spasms in the lumbar spine. (*Id.*) Radiographs of the cervical spine revealed degenerative disc disease, while x-rays of the lumbar spine revealed disc space narrowing and minimal degenerative disc disease. (*Id.*) Plaintiff's gait was normal. (*Id.*) There was diminished flexion and extension of the left hand and slight Dupytren's Contracture. (*Id.*) Dr. Goldstein diagnosed neck pain, lumbago, lumbar sprain, thoracic sprain, degenerative disc disease, knee pain, internal derangement of the knee, Dupuytren's Contracture, and pain in the hand. (*Id.*)

---

[2] Based on the information available to the Court, it appears that Dr. Goldstein was hired by Plaintiff.

On January 9, 2013, Plaintiff returned to Dr. Goldstein, complaining of pain in his back after sitting for too long, as well as pain in his shoulder blades. (Tr. at 250.) An MRI conducted the day before revealed multi-level small herniated discs and osteophytes with no significant foraminal compromise. (*Id.*) On examination, Dr. Goldstein noted mid-line tenderness and pain, diminished flexibility, extension, rotation, and lateral bending in the lumbar spine. (Tr. at 251.) Dr. Goldstein prescribed a Medrol dose pack and recommended chiropractic care. (Tr. at 252.)

Plaintiff returned to Dr. Goldstein on September 11, 2013; May 7, 2014; August 11, 2014; and September 22, 2014, with similar complaints of back and neck pain. (Tr. at 297, 300, 303, 306.) Physical therapy and chiropractic care helped Plaintiff's condition. (*Id.*) On each occasion, Dr. Goldstein recommended continued chiropractic care and various medications to relieve his pain. (Tr. at 299. 302, 305, 308.) Plaintiff also received trigger point injections during these visits. (Tr. at 297, 300, 303, 306.)

On September 25, 2014, Dr. Goldstein completed a functional assessment in which he opined that Plaintiff was limited to less than two hours of standing or walking in an eight-hour day. (Tr. at 280.) Dr. Goldstein also found that Plaintiff was limited to less than two hours of sitting in an eight-hour day, requires frequent breaks and bed rest throughout the work day, and takes medications that interfere with his ability to function in a work setting. (Tr. at 280–281.) Additionally, Dr. Goldstein indicated that Plaintiff could lift between five and 10 pounds for up to two-thirds of an eight-hour day. (Tr. at 280.) In conclusion, Dr. Goldstein stated that Plaintiff is unable to work in any capacity due to severe and constant pain in his neck, back, knees, and hand. (*Id.*)

3. Evaluation by Dr. Drew DeMarco - Chiropractor

Plaintiff was evaluated by a chiropractor, Dr. Drew DeMarco, on November 26, 2012, following complaints of cervical and lumbar spine pain.[3] (Tr. at 294.) Plaintiff demonstrated moderately severe pain in cervical and lumbar spine with inflexibility and stiffness with restricted range of motion and a pins and needles sensation. (*Id.*) Plaintiff had a sharp pain in his right shoulder and right arm, as well as a pins and needles sensation in his buttocks, left posterior thigh, right posterior thigh, and lumbar spine. (*Id.*)

Dr. DeMarco's examination revealed spinal joint fixation in the cervical, thoracic, and lumbar spine. (*Id.*) There was also tightness of the cervical and lumbar paraspinal muscles bilaterally. (*Id.*) The O'Donahue maneuver, the straight leg raise test, and Laseque's test were positive bilaterally. (Tr. at 294–295.) Cervical flexion was limited to 20 degrees, extension was limited to 10 degrees, right and left lateral flexion were limited to 10 degrees, right rotation was limited to 50 degrees, left rotation was limited to 60 degrees, and lumbar flexion was limited to 60 degrees. (Tr. at 295.) Muscle strength was limited to 4/5 in the cervical distribution of the deltoid, biceps, wrists extensor and flexors. (*Id.*) The same 4/5 limitation was found for foot eversion and inversion, and for Doris flexion of the great toe. (*Id.*) Dr. DeMarco diagnosed brachial neuritis, muscle spasms, and cervical, thoracic, and lumbar spine pain. (*Id.*) He recommended that Plaintiff return three times a week for chiropractic care. (Tr. at 296.)

Dr. DeMarco provided Plaintiff with chiropractic care in January, February, April, June, July, October, and November of 2013. (Tr. at 312–313.) Plaintiff continued to see Dr. DeMarco in January and May through July of 2014. (Tr. at 311.)

---

[3] Dr. DeMarco stated that he was hired by Plaintiff. (Tr. At 294.)

Following an examination on September 18, 2014, Dr. DeMarco completed a functional assessment for Plaintiff. (Tr. at 288–293.) Dr. DeMarco averred that Plaintiff can stand or walk for less than two hours during an eight-hour day and can only sit for less than two hours within an eight-hour day and requires bed rest and frequent breaks throughout the work day. (Tr. at 288–289.) Dr. DeMarco asserted that Plaintiff can lift between five and 10 pounds for up to two-thirds of an eight-hour day. (Tr. at 288.) Additionally, Dr. DeMarco found that Plaintiff suffers from pain that would prevent him from performing eight hours of work, in addition to taking medications that interfere with his ability to function and concentrate at work. (Tr. at 289.) Dr. DeMarco concluded that Plaintiff is unable to work in any capacity due to his severe pain and lack of range of motion in his neck, mid back, and lower back. (*Id.*) Moreover, Dr. DeMarco stated that Plaintiff is permanently disabled and cannot engage in even sedentary work and that Plaintiff's disabilities will continue to his impede his ability to engage in daily activities, including work, exercise, and household chores. (Tr. at 293.)

4. Evaluation by Dr. Colin Clarke - Nuclear and Internal Medicine Specialist

On September 22, 2014, Dr. Colin Clarke examined Plaintiff for complaints of limited use of his left hand due to contracture, and limited range of motion related to injuries sustained when a rifle exploded.[4] (Tr. at 317.) Plaintiff also complained of lower back pain, mid-back pain, and neck pain. (*Id.*) Upon examination, Dr. Clarke noted that Plaintiff was unable to remain still in his chair and moved from side to side. (Tr. at 318.) Plaintiff mounted and dismounted the examination table cautiously. (*Id.*) Examination of Plaintiff's neck revealed tenderness of the paraspinal muscles with spasm, and flexion, extension, rotation, and lateral flexion were limited due to pain. (Tr. at 319.) There was tenderness and spasm of Plaintiff's

---

[4] Based on the information available to the Court, it appears that Dr. Clarke was hired by Plaintiff.

paraspinal muscles of the back and significant straightening of the normal lumbar lordosis. (*Id.*)
There was no costovertebral angle tenderness. (*Id.*) Plaintiff's left hand was contracted in a
flexed position with palpable contractures over the palmar aspect, particularly over the fifth
metacarpal. (*Id.*) Attempts at passive extension of Plaintiff's fingers caused pain. (*Id.*)

Dr. Clarke determined that Plaintiff has a total disability and that due to Plaintiff's
constant back and neck pain, he is unable to concentrate, nor is he able to sit or stand in a fixed
position for any period of time. (Tr. at 319.) Dr. Clarke concluded that the longest Plaintiff can
walk or stand in an eight-hour day is two hours total. (*Id.*) Furthermore, Dr. Clarke indicated
that Plaintiff can sit for less than four hours cumulatively in an eight-hour day, and that during
that time he must change positions every 15 minutes. (*Id.*) Dr. Clarke found that Plaintiff cannot
reliably lift or carry anything with his left hand, must rely on his right hand, and may only lift up
to 10 pounds during one-third of an eight-hour day. (*Id.*) Additionally, Dr. Clarke averred that
Plaintiff's reliance on narcotics to manage his pain causes him to be unable to perform tasks
involving reasoning or memory. (Tr. 320.) Moreover, Dr. Clarke opined that Plaintiff cannot
drive or take public transportation. (*Id.*) Dr. Clarke further stated that Plaintiff is not suited for
even sedentary work. (*Id.*)

C. Consultative Medical Evidence

1. Evaluation by The NYPD Medical Board Pension Fund

On December 11, 2011, Drs. Nicholas DePalma, Harold Bernanke, and Marjorie
Schubert of the NYPD Pension Fund Medical Board ("NYPD Medical Board") examined
Plaintiff in connection with his request for Accidental Disability Pension. (Tr. at 275–278.) In
his application for benefits, Plaintiff stated he had constant pain and erratic muscle spasms in his
left hand that preclude him from performing the full duties of a police officer. (Tr. at 275.)

Upon examination, the NYPD Medical Board noted range of motion of the elbows was full in flexion and extension bilaterally. (Tr. at 277.) They also noted a 20 degree loss in supination on the left hand as compared to the right. (*Id.*) However, there was full range of motion in the wrist. (*Id.*) Plaintiff complained of pain during forced flexion of his fifth finger. (*Id.*) There was thickening and scarring along the course of the flexor tendon of Plaintiff's fifth finger in the palm, as well as thickening at the base of his fifth finger. (*Id.*) Plaintiff's fifth finger lacked a good deal of extension at the metacarpophangeal joint. (*Id.*) In addition, Plaintiff's left hand grasp was 5/5 but lateral grasp was 3+ to 4 out of 5. (*Id.*) There was minimal active flexion of Plaintiff's interphanlangeal joint of the fifth finger and weakness in the flexion of the finger to resistance. (*Id.*) Abductor pollicis power was 4/5 on the left and 5/5 on the right. (*Id.*)

The NYPD Medical Board concluded that Plaintiff was disabled from performing the full duties of a New York City Police Officer and approved his application for Accident Disability Retirement. (Tr. at 277–278.) Their final diagnosis was left hand derangement, status-post surgery X2 with residual scarring, tenderness, weakness, and diminished range of motion in the hand. (Tr. at 278.) The NYPD Medical Board stated that the cause of Plaintiff's disability was his March 14, 2006 injury in the line of duty. (*Id.*)

2. Evaluation by Dr. Andrea Pollack - Internal Medicine

On July 17, 2013, Dr. Andrea Pollack conducted a consultative internal medicine examination of the Plaintiff. (Tr. at 255–259.) Plaintiff complained of 25 years of back pain caused by an automobile accident. (Tr. at 255.) The back pain was constant, dull, achy, and spasm-like between his shoulder blades. (*Id.*) Plaintiff had seen a chiropractor and had received physical therapy and trigger point injections. (*Id.*) Plaintiff also reported pain in his left hand as

a result of a workplace accident.  (*Id.*)  At the time of Dr. Pollack's examination, Plaintiff was

taking Ibuprofen, Percocet, and Tylenol with Codeine to manage his pain.  (*Id.*)

Dr. Pollack's examination revealed that Plaintiff's gait was normal and that he could

walk without any assistive devices.  (Tr. at 256.)  Plaintiff was able to get on and off the exam

table and rise from his chair without difficulty.  (*Id.*)  Plaintiff had scars on his left hand from a

prior surgery.  (*Id.*)  Dr. Pollack noted full flexion of Plaintiff's cervical spine, but lumbosacral

flexion was 65 degrees, lateral flexion was 25 degrees, and lumbosacral rotation was 30 degrees.

(Tr. at 257.)  Straight leg raising was negative and there was full range of motion in Plaintiff's

knees and ankle bilaterally.  (*Id.*)  Plaintiff's hand and finger dexterity were intact and grip

strength was full (5/5) bilaterally.  (*Id.*)  Dr. Pollack diagnosed back pain, left hand pain, right leg

pain, and elevated blood pressure.  (*Id.*)  She reported that Plaintiff had a mild restriction in

bending, lifting, carrying, walking, standing, and sitting.  (*Id.*)

## DISCUSSION

I.  *Standard of Review*

A.  Review of the ALJ's Decision

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

U.S.C. § 405(g).  The Court may set aside a determination of the ALJ only if it is "based upon

legal error or is not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d

Cir. 1999) (internal quotation marks and citation omitted).  "Substantial evidence is 'more than a

mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to

support a conclusion.'" *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'"  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).  This remains true "even if contrary evidence exists."  *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004)

Furthermore, the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case de novo.  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted).  Thus the only issue before the Court is whether the ALJ's finding that Plaintiff was not eligible for disability benefits was "based on legal error or is not supported by substantial evidence."  *Rosa*, 168 F.3d at 77.

B.  Eligibility for Disability Benefits

To be eligible for disability benefits under the Social Security Act (the "SSA"), a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The SSA further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

## II.    *The ALJ's Decision*

ALJ Haber Lamkay denied Plaintiff's claim, finding that he retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. at 33) ALJ Haber Lamkay concluded that Plaintiff was not disabled based on her determination that Plaintiff is still able to perform his previous work as a police aide and firearms expert. (Tr. at 37.)

Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, ALJ Haber Lamkay found that Plaintiff had not engaged in substantial gainful activity since May 31, 2011, the alleged disability onset date. (Tr. at 32.) Proceeding to step two, the ALJ determined that Plaintiff has the following severe impairments: Cervical and Lumbar Degenerative Disc Disease

and Left Hand Dupuytren's Contracture with Left Hand Derangement. (*Id.*) At step three, ALJ Haber Lamkay concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), "that includes the ability to sit six hours and to stand/walk two hours in an eight-hour workday and lift/carry ten pounds occasionally." (Tr. at 33.) ALJ Haber Lamkay found that Plaintiff "can never climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl, must avoid concentrated exposure to extreme cold, wetness or humidity, vibration and hazards such as dangerous moving machinery and unprotected heights." (*Id.*) Lastly the ALJ determined that Plaintiff can "frequently handle and/or finger with the left hand and must be afforded the opportunity for brief one to two minutes change of position every one-half hour." (*Id.*)

In making her RFC determination, the ALJ considered statements made by Plaintiff's orthopedic hand surgeon, Dr. Salvatore Lenzo, in which he concluded that Plaintiff's symptoms were the result of Dupuytren's contracture of his left hand. (Tr. at 34.) While Dr. Lenzo stated that Plaintiff was unable to return to his work as a police officer, he "offered no specific opinion on the claimant's physical capacity." (*Id.*) ALJ Haber Lamkay considered Dr. Lenzo's statements that Plaintiff can no longer work only for the fact that they were stated. (*Id.*) ALJ Haber Lamkay noted that, "[t]hese statements are entitled to no special significance because the legal finding of 'disability' is reserved to the Commissioner of Social Security pursuant to 20 C.F.R. 404.1527 and SSR 96-9p." (Tr. at 34–35.)

ALJ Haber Lamkay also considered the NYPD Medical Board's conclusions only for the fact that they were stated. (Tr. at 35.) Although the NYPD Medical Board concluded that Plaintiff was unable to perform police duties, ALJ Haber Lamkay explained that a determination that Plaintiff is "disabled" is entitled to no special significance because such a determination is reserved to the Commissioner. (*Id.*)

The ALJ noted that Plaintiff was treated by orthopedists at Orlin & Cohen, in addition to receiving chiropractic care from Dr. DeMarco. (*Id.*) ALJ Haber Lamkay also reviewed Plaintiff's MRI results, emphasizing that they "revealed multi-level 'small' cervical herniations or osteophytes with 'no' significant stenosis or foraminal compromise and a normal thoracic spine." (*Id.*) The ALJ also considered Dr. Goldstein's and Dr.DeMarco's conclusions regarding Plaintiff's functional capacity, including their opinions that Plaintiff could no longer work in any capacity. (*Id.*) ALJ Haber Lamkay also reviewed Dr. Clarke's evaluation and indicated that his conclusions regarding Plaintiff's functional capacity were identical to those of Dr. Goldstein. (Tr. at 36.)

However, ALJ Haber Lamkay found that the opinions of Drs. Clarke, Goldstein, and DeMarco were inconsistent with the objective medical evidence on the record. (*Id.*) The ALJ noted that the opinions were contrary to the MRI, which revealed no significant stenosis of foraminal compromise. (*Id.*) ALJ Haber Lamkay also determined that the opinions were inconsistent with the fact that although the car accident that injured Plaintiff's back occurred in 1989, he did not seek treatment with Orlin & Cohen or the chiropractor until 2012. (*Id.*) ALJ Haber Lamkay found these statements to be at odds with Plaintiff's testimony regarding his activities of daily living. (*Id.*) Plaintiff reported that he can cook, do laundry, and provide childcare twice a week. (*Id.*) In addition, ALJ Haber Lamkay indicated that the portions of the

opinions where the doctors conclude that Plaintiff cannot work are entitled to no special weight because the legal finding of "disability" is reserved to the Commissioner. (*Id.*)

ALJ Haber Lamkay afforded "great weight" to Dr. Pollack's findings. (Tr. at 37.) Dr. Pollack opined that Plaintiff has a mild restriction with bending, lighting, carrying, walking, standing, and sitting. (Tr. at 36.) The ALJ found that Dr. Pollack's report was consistent with the findings of Plaintiff's medical examination. (Tr. at 37.) These findings include some limitation in the lumbar range of motion, full muscle strength in the upper and lower extremities, and intact hand and finger dexterity with full grip strength bilaterally. (*Id.*)

ALJ Haber Lamkay also found that while Plaintiff's impairments could reasonably cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (*Id.*) Plaintiff testified that he sometimes has problems raising his arms over his head and that he experiences frequent pain in his hands. (*Id.*) However, he also testified that he can type and pick up pennies with his left hand, that he can pull the clutch on a motorcycle with his left hand, bathe independently, prepare simple meals, do laundry, clean with help from his daughters, and go hunting on occasion. (*Id.*) The ALJ determined this testimony to be inconsistent with Plaintiff's allegations of disability. (*Id.*) ALJ Haber Lamkay also indicated that the gap of over 20 years between the motor vehicle accident that caused his back pain and the time that Plaintiff sought out treatment also makes his claim that he can no longer work less credible. (*Id.*)

The ALJ found that Plaintiff is not capable of performing his past relevant work as a police officer, but is capable of performing his past relevant work as a police aide and firearms expert. (*Id.*) ALJ Haber Lamkay stated that the past work as a police aide was a semi-skilled position requiring a sedentary exertional capacity and that the past work as a firearms expert was

a skilled position generally performed at a light exertional capacity but actually performed at a sedentary capacity. (*Id.*) As such, the ALJ determined that neither position requires the performance of work activities outside Plaintiff's RFC. (*Id.*) Lastly, ALJ Haber Lamkay concluded that Plaintiff does not have a disability as defined by sections 416(i) and 423(d) of the Social Security Act. (Tr. at 38.); *See also* 42 U.S.C. § 416(i)(1), 42 U.S.C. § 423(d)(1)(A).[5]

III.    *Summary of Arguments*

In support of his motion, Plaintiff argues that the Court should reject the ALJ's conclusion that Plaintiff retained an RFC necessary to perform his previous work as a police aide or firearms expert. (Pl.'s Mem. in Supp. at 17.) Plaintiff asserts that ALJ Haber Lamkay should have given the NYPD Medical Board's finding that Plaintiff is disabled greater weight as a determination by another government agency. (*Id.* at 18.) Furthermore, Plaintiff maintains that the ALJ misconstrued the NYPD Medical Board's findings as limited to whether the Plaintiff can perform the work of a police officer, as opposed to work of any kind for the NYPD. (*Id.* at 19.) In addition, Plaintiff claims that ALJ Haber Lamkay erred in ignoring the findings of the NYPD Medical Board, as well as Plaintiff's own complaints regarding his inability to concentrate while taking his pain medication as part of her RFC determination. (*Id.* at 20.) Lastly, Plaintiff argues that the ALJ's evaluation of Plaintiff's credibility was "incomplete and erroneous." (*Id.* at 21.) Specifically, Plaintiff contends that ALJ Haber Lamkay failed to consider the Plaintiff's 32-year work record, in contravention to Second Circuit decisions emphasizing the importance of work history to a credibility assessment. (*Id.*)

---

[5] 42 U.S.C. § 416(i)(1) defines the term "disability" as: "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 USC § 423(d)(1)(A) is effectively identical.

Defendant argues that ALJ Haber Lamkay correctly concluded that Plaintiff had the RFC necessary to perform his past relevant work as a police aide and firearms expert. (Def.'s Mem. in Supp. [EFC No. 19] at 18.) Defendant also contends that ALJ Haber Lamkay was required to reject the conclusions of the Medical Board because the legal finding of disability is reserved to the Commissioner. (*Id.* at 19.) Furthermore, Defendant asserts that the burden is on Plaintiff to prove that he is not capable of performing his past relevant work. (*Id.*) Defendant claims that ALJ Haber Lamkay was not required to accept Plaintiff's testimony that his medication impairs his ability to concentrate. (*Id.* at 22.) In addition, Defendant maintains that the assessment of Plaintiff's credibility rests with the Commissioner, not the Court. (*Id.*) Lastly, Defendant argues that the Commissioner's decision may only be reversed if that decision is proven not to be supported by substantial evidence, even if Plaintiff's position is supported by substantial evidence. (*Id.* at 23.)

IV.    *Plaintiff's Motion is Denied and Defendant's Cross Motion is Granted*

After a careful review of the record in this case, the Court concludes that the ALJ's conclusions are supported by substantial evidence and that she applied the correct legal standards.

A. The Weight Given to the NYPD Medical Board Findings Was Proper

Social Security regulations mandate that an ALJ evaluate all medical opinions concerning the nature and severity of a claimant's impairment. 20 C.F.R. § 404.1527(c). In evaluating such an opinion, the ALJ must consider a variety of factors including examining relationship, treatment relationship, supportability, consistency, and specialization. *See id.* However, some opinions, including opinions that a claimant is disabled, are not medical opinions, "but are, instead, opinions on issues reserved to the Commissioner because they are administrative

findings that are dispositive of a case." 20 C.F.R. § 404.1527(d). While a statement by a medical source that a claimant is disabled is not dispositive, an ALJ is required to review the medical findings and evidence that support that statement. 20 C.F.R. § 404.1527(d)(1). Additionally, no special significance will be given to the source of such an opinion. 20 C.F.R. § 404.1527(d)(3).

Thus, "although a determination made by another government agency that a social security claimant is disabled is entitled to 'some weight and should be considered,' that determination is not binding." *Lohnas v. Astrue*, 510 Fed. Appx. 13, 14 (2d Cir. 2013) (citing *Cutler v. Weinberger*, 516 F. 2d 1282, 1286 (2d Cir. 1975) ("while the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered")). An ALJ, when evaluating the decision of another agency, "is compelled to consider the physician's statements, address the evidence in the treating physician's record, and explain his or her conclusions." *Trentini v. Colvin*, 2016 WL 5793658, at *12 (E.D.N.Y. Oct. 3, 2016) (finding an error of law where the ALJ dismissed the disability determination of another agency in a single sentence).

Here, ALJ Haber Lamkay made note of the NYPD Medical Board's statement that Plaintiff is "unable to perform police duties to due his left hand impairment." (Tr. at 35.) The ALJ also indicated that the opinion expressed by the NYPD Medical Board relates only to Plaintiff's capacity to return to work as a police officer, rather than a police aide or firearms expert. (*Id.*) Plaintiff argues that the ALJ has misconstrued the NYPD Medical Board findings. (Pl.'s Mem. in Supp. at 19.)

Upon review of the administrative record, the Court notes that the NYPD Medical Board's report states that "[Plaintiff] is disabled from performing the full duties of a New York

City Police Officer." (Tr. at 277.)  The report goes on to approve Plaintiff's application for

"Accident Disability Retirement."  (Tr. at 278.)  Notably, the NYPD Medical Board report

focuses on the injury to Plaintiff's hand, and makes no mention of his neck or back pain.  (Tr.

275–278.)  The Second Circuit has held that an ALJ had not erred in failing to discuss a

governmental agency's determination where that determination where, although not specifically

mentioned, it was clearly considered by the ALJ who thoroughly discussed the other

administrative records in the findings.  *See Claymore v. Astrue*, 519 Fed. App'x. 36, 38 (2d Cir.

2010) (summary order).  In response to the ALJ's opening question as to what Plaintiff's most

limiting issue was, Plaintiff tellingly testified that his primary problem was his back pain, rather

than the injury to his left hand, and that his inability to sit for long periods of time prompted his

departure from his work as a police aide.  (Tr. 62.)  Therefore, the NYPD Medical Board's

conclusion that Plaintiff was disabled due to his hand injury was less relevant to the ALJ's

disability determination.

 While her discussion of the NYPD Medical Board's findings was brief, ALJ Haber

Lamkay did not dismiss its opinions in a single sentence.  *See Trentini*, 2016 WL 5793658, at

*12.  The ALJ addressed the major conclusions of the NYPD Medical Board's report; she did

not cherry-pick the report for specific statements that supported her conclusion.  *See Hankerson

v. Harris*, 636 F. 2d 893, 896 (2d Cir. 1980) (finding error where the ALJ relied on a single

sentence in the Department of Veteran's Affairs records that stated claimant was in "relatively

good health" and did not acknowledge the Department's finding that the plaintiff was 60 percent

disabled).  Therefore, the ALJ did not fail to consider the NYPD Medical Board's statements that

Plaintiff is disabled.  *See Rivera v. Colvin*, 592 Fed. App'x. 32, 33 (2d Cir. 2015) (summary

order) (finding no error where the ALJ considered the outside agency's determination and

provided sufficient evidence in the record for rejecting it)  Furthermore, even if the ALJ did err

in her treatment of the NYPD Medical Board's disability determination—which the Court finds

did not happen here—remand is not required when the ALJ's decision is otherwise supported by

substantial evidence.  *See Lohas v. Astrue*, 510 Fed. App'x. 13, 14–15 (2d Cir. 2013) (summary

order) ("This Court may set aside the Commissioner's decision only if the factual findings are

not supported by substantial evidence, or if incorrect legal standards were applied.")

### B.  The ALJ's RFC Assessment was Proper

Although Plaintiff contends that he lacks the RFC to perform his past work as a police

aide and firearms examiner, a review of the record as a whole reveals that ALJ Haber Lamkay's

RFC determination was supported by substantial evidence.  *See Cage v. Comm'r of Soc. Sec.*,

692 F. 3d 118, 127 (2d Cir. 2012) (noting that the Court must uphold the ALJ's decision where it

is supported by substantial evidence).

Plaintiff argues that the ALJ's RFC assessment should be rejected, claiming that ALJ

Haber Lamkay failed to address both the findings of the NYPD Medical Board relating to

Plaintiff's hand injury as well as Plaintiff's testimony that his pain medication causes him to

become drowsy during the day.  (Pl.'s Mem. in Supp. at 19–20.)  Even if an isolated portion of

the evidence was not explicitly incorporated into an ALJ's decision regarding a claimant's RFC,

the ALJ need not "reconcile explicitly every conflicting shred of medical testimony. . . ."

*Fiorello v. Heckler*, 725 F. 2d 174, 176 (2d Cir. 1981).  However, neither may an ALJ patently

reject all the medical evidence in Plaintiff's favor.  *See id.* (remanding where the ALJ made an

"unreasoned" determination that conflicted with the opinion of every doctor on the record, all of

whom stated claimant could not work).  An ALJ is in fact required to examine all the evidence in

the record as a whole when making his or her determination.  *See Matta v. Astrue*, 508 Fed.

App'x 53, 56 (2d Cir. 2013) (holding the ALJ's decision need not "perfectly correspond" to any of the medical source opinions cited because he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). Moreover, "[d]ivergent medical opinions, and conflicting evidence are for the ALJ to resolve." *Fiorante v. Comm'r of Soc. Sec.*, 2018 WL 3057705, at *7 (E.D.N.Y. June 19, 2018); *see also Cage*, 692 F. 3d at 122 ("[W]e do not substitute our judgment for the agency's, or determine *de novo* whether the claimant is disabled.") (internal quotation marks and citations omitted).

Here, ALJ Haber Lamkay found that the statements of Drs. Goldstein, DeMarco, and Clarke regarding Plaintiff's RFC were inconsistent with the objective medical evidence in the record, including Plaintiff's MRI. (Tr. at 36.) Plaintiff underwent an MRI in January of 2013, which Dr. Goldstein himself noted revealed small herniated discs with no significant stenosis or foraminal compromise. (Tr. at 250). The ALJ also explained that the doctors' statements were not supported by the relatively conservative course of treatment that Plaintiff received. (*Id.*) Plaintiff was prescribed chiropractic care and pain medication following each visit with Dr. Goldstein, both of which alleviated Plaintiff's symptoms. (Tr. at 299, 302, 305, 308.) Moreover, ALJ Haber Lamkay took note of the significant gap between the car accident Plaintiff suffered and the time when he sought treatment, as well as Plaintiff's testimony regarding his activities of daily living. (*Id.*) Based on these inconsistencies, the ALJ gave less weight to the opinions of Drs. Goldstein, DeMarco, and Clarke. (*Id.*) Instead, ALJ Haber Lamkay gave greater weight to Dr. Pollack's opinions, because Dr. Pollack's findings were more consistent with the objective medical evidence and Plaintiff's testimony. (*Id.* at 37.)

ALJ Haber Lamkay based her RFC determination on substantial evidence and comprehensively explained the weight she attributed to the relevant medical opinions. To the

extent that some of the evidence in the record was conflicting, the standard of review here mandates deference to the ALJ's resolution of such disparities. *See Fiorante*, 2018 WL 3057705, at *8 ("The Court again notes that this is a deferential standard - it is not a question of whether this Court would rule in the same manner as the ALJ. . . ."). ALJ Haber Lamkay's discussion of the medical evidence at issue here was sufficient to allow the Court to "glean the rationale" of her decision. *See Monguer*, 722 F. 2d at 1040.

Furthermore, ALJ Haber Lamkay took the medical evidence regarding Plaintiff's back pain and his difficulty concentrating into account when she issued her RFC determination. Plaintiff's workplace limitations include that he must be allowed a position change every half hour, cannot climb ladders, and must avoid hazards such as dangerous machinery and unprotected heights. (Tr. at 35.) Therefore, ALJ Haber Lamkay did not rely on an "unreasoned rejection of all medical evidence in [Plaintiff's] favor" when formulating his RFC. *Compare Fiorello*, 725 F. 2d at 176 (remanding where the ALJ rejected all evidence in claimant's favor), *with Johnson v. Colvin*, 669 Fed. App'x. 44, 47 (2d Cir. 2016) (summary order) (upholding an ALJ's decision where the ALJ took into account plaintiff's history of a learning disability and his physical condition when setting limits to his RFC).

### C. The ALJ's Credibility Assessment was Proper

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms when analyzing whether he is disabled. *See* 20 C.F.R. § 404.1529(a) (2011). In order to evaluate a claimant's subjective testimony regarding his symptoms, first, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce" the claimed symptoms. *See* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). Second, the ALJ "must evaluate the intensity,

persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* Moreover, if a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (internal quotation marks omitted).

If a claimant's reported symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered. See 20 C.F.R. § 404.1529(c)(3). These include but are not limited to: (1) daily activities; (2) the location, duration, frequency and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment other than medicine to relieve those symptoms; (6) any other measures used to relieve the pain or symptoms; and (7) other factors concerning claimants functional limitations and restrictions due to pain or other symptoms. *Id*. An ALJ need not, however, explicitly recite the seven regulatory factors. *See Cichocki v. Astrue*, 534 Fed. App'x. 71, 75 (2d Cir. 2013). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" *Id.* (quoting SSR 96–7p, 1996 WL 374186, at *2) (alterations in original). A single conclusory statement that the claimant is not credible is not sufficient; the evidence of record must permit the court to glean the rationale of the ALJ's decision. *Cichocki*, 534 Fed. App'x. at 75 (internal quotation marks omitted).

Plaintiff argues that ALJ Haber Lamkay's credibility determination was "incomplete and erroneous." (Pl.'s Mem. in Supp. at 21.) Specifically, Plaintiff argues that the ALJ failed to

explain how Plaintiff's testimony regarding his activities of daily living detracted from his credibility. (*Id.*) However, the ALJ's credibility determination need only contain sufficient facts to allow a reviewing court to evaluate his or her decision. *See Owens v. Berryhill*, 2018 WL 1865917, at *10 (E.D.N.Y April 8, 2018) (remanding the ALJ's credibility decision on the basis that it failed to take into account the requisite requirements under the regulations and was not supported by substantial evidence). The ALJ "is not required to discuss all seven factors as long as the decision 'includes precise reasoning, is supported by evidence in the case record, and clearly indicates the weight the ALJ gave to the claimant's statements and the reasons for that weight.'" *Dowling v. Berryhill*, 2018 WL 472817, at *8 (E.D.N.Y. Jan. 18, 2018) (quoting *Felix v. Astrue*, 2012 WL 3043203, at *8 (E.D.N.Y. July 24, 2012)). Here, ALJ Haber Lamkay explained that Plaintiff's testified activities of daily living, including driving occasionally, bathing independently, preparing meals, and doing laundry detract from his disability claim. (Tr. at 37.) Plaintiff also testified that he can pick up pennies and type. (*Id.*) ALJ Haber Lamkay noted that these activities made Plaintiff's statements concerning the intensity and limiting effects of his symptoms less credible. *See Dowling*, 2018 WL 472817, at *8 (finding plaintiff to lack credibility where she testified she could drive locally, go food shopping, do laundry, clean, and cook).

Plaintiff also asserts that the ALJ's credibility assessment was in part based on factual errors. (Pl.'s Mem. in Supp. at 21.) Specifically, Plaintiff contends that the ALJ incorrectly stated that Plaintiff could pull the clutch on his motorcycle and still goes hunting with his friends. (*Id.*) Plaintiff did in fact testify that since his injury to his hand, he "ha[s] a hard time using the clutch" on his motorcycle. (Tr. at 73.) He did not, however, say that he was incapable of operating the clutch. Additionally, Plaintiff's testimony regarding hunting is less clear.

Plaintiff stated that he still goes on hunting trips with his friends, but also stated that he could no longer test rifles at the police department. (Tr. at 75, 53.) Notwithstanding these few arguable factual errors, the ALJ's credibility determination was otherwise based on substantial evidence in the record, including Plaintiff's testimony and the medical evidence. *Compare Aponte v. Sec, Dep't of Health and Human Services*, 728 F. 2d 588, 592 (2d Cir. 1984) (upholding the Secretary's credibility decision where there was substantial evidence in the record as a whole to support the determination), *with Horan v. Astrue*, 350 Fed. App'x. 483, 484 (2d Cir. 2009) (summary order) (remanding where the credibility determination was not supported by substantial evidence and was the product of legal error).

Lastly, Plaintiff claims that ALJ Haber Lamkay erred in failing to consider Plaintiff's work history as part of her credibility determination. (Pl.'s Mem. in Supp. at 21.) Plaintiff cites *Singletary v. Secretary of Health, Ed. and Welfare*, 623 F. 2d 217, 219 (2d Cir. 1980) to support his contention that a claimant's work history *must* be considered when assessing credibility. (Pl.'s Mem. in Supp. at 21.) (emphasis added). However, *Singletary* merely posits that the claimant's work history justified an inference that when he stopped working he did so for the reasons to which he testified. *See* 623 F. 2d at 219. Nowhere in that case does the Second Circuit hold that work history must be considered or is dispositive in every case. *See id.* In addition, the cases Plaintiff cites do not support the contention that the single error of failing to consider work history justifies remand. *See Rivera v. Schweiker*, 717 F. 2d 719, 724–725 (2d Cir. 1983) (remanding where the ALJ based its credibility determination principally on claimant's demeanor at the hearing and failed to consider work history or testimony by plaintiff's family); *Horan v. Astrue*, 350 Fed. App'x. 483, 485 (2d Cir. 2009) (summary order) (remanding where the ALJ made numerous factual errors in addition to failing to consider work history);

*Tarsia v. Astrue*, 418 Fed. App'x. 16, 19 (2d Cir. 2011) (summary order) (remanding where the ALJ provided no basis for its finding that plaintiff was not credible).

Moreover, a good work record affords a plaintiff substantial credibility when a plaintiff has had a "life history of hard labor performed under demanding conditions over long hours[.]" *See Horan*, 350 Fed. App'x at 485 (quoting *Singletary*, 623 F.2d at 219). Here, Plaintiff was working a sedentary job with significant accommodations that comported with the recommendations of his doctors. Plaintiff resigned from this job after he was required to perform other duties that caused him pain on a *single* occasion, without ever asking his supervisors to ensure that this would not happen again. Here, the Court finds that the ALJ's credibility determination is based on substantial evidence in the record, especially in light of the conflicting information presented by Plaintiff that he goes hunting for pleasure with his friends but cannot sit at a desk and test rifles even with regular breaks to lie down. Accordingly, the ALJ's determination is affirmed.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is denied, Defendant's cross-motion is granted, and the decision of the Commissioner is affirmed. The Clerk of the Court is directed to enter judgment in favor of Defendant and close the case.

**SO ORDERED.**

Dated: Central Islip, New York
     August 29, 2018                            /s/ Denis R. Hurley_____
                                               United States District Judge